IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA,

v.

CASE NO. 1:03-cr-41-MP-GRJ

RODERICK MYRON STEVENSON,

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Doc. 765, a *pro se* motion to vacate pursuant

to 28 U.S.C. § 2255.  The motion stems from Defendant's no contest plea to one count

of conspiracy to distribute and possess with intent to distribute more than fifty grams of

cocaine base, in violation of 18 U.S.C § 846, for which he received a sentence of 235

months imprisonment.  The Government filed a response in opposition to the motion to

vacate, and Defendant filed a reply. (Docs. 791, 801.)  Upon due consideration of the

motion, the response, and the Defendant's reply, the undersigned recommends that the

motion to vacate be denied.[1]

## Background

The charge against Defendant was based on the investigation of a crack cocaine

distribution ring in Winter Haven, Florida.  Several crack cocaine suppliers identified

Defendant, then a deputy sheriff with the Polk County Sheriff's Department, as an

individual to whom they gave cash in exchange for protection and tips regarding police

---

[1]Upon review of the record and the parties' submissions, the Court concludes
that no evidentiary hearing is warranted in this case.  *See* Rule 8, Rules Governing
Motions Under § 2255.

activity.  Defendant was indicted on one count of conspiracy to distribute and possess

with intent to distribute crack cocaine, along with eight co-conspirators.  Defendant

moved to continue the trial seven times, at which point the district judge ordered a

medical examination of Defendant by the Division of Forensic Psychiatry at Shands

Teaching Hospital in Gainesville, Florida.  The parties stipulated that Defendant was

competent to stand trial on August 22, 2005. (Docs. 495, 498.)

On the same date, Defendant entered a "no contest" plea to the indictment,

pursuant to a Plea and Cooperation Agreement.  (Doc. 497.)  On November 8, 2005,

Defendant moved to withdraw his plea.  (Doc. 509.)  In the motion to withdraw his plea,

Defendant argued that he had entered the plea in reliance on Assistant U.S. Attorney

Frank Williams' "representation that he would not object to a sentence of 'no prison

time,' and would accordingly file a motion for downward departure pursuant to Sec.

5(K)1.1, in exchange of [sic] Defendant's 'no contest' plea along with his cooperation in

the prosecution of other persons." *Id.* at 2.  Defendant asserted that after he entered his

no-contest plea, the Government demanded that he undergo a polygraph test (a

condition not stated in the plea agreement).  Defendant asserted that the Government

"demand[ed] that the Defendant discontinue use of his pain medication" prior to the

polygraph.  *Id.* at 4.  At the polygraph, Defendant claimed, the Government deemed him

"a liar" because he continued to assert his innocence of the conspiracy charge, and

thereafter informed him that the Government did not wish to use him as a cooperator.

*Id.*  Defendant asserted that the Government's use of a polygraph test and subsequent

refusal to permit him to cooperate violated his due process rights and justified

withdrawal of his no-contest plea.  In his motion, Defendant asserted both that the

Government had agreed not to object to a no-prison sentence, and that the Government had agreed "to recommend" a no-prison sentence if he cooperated. *Id.* at 2, 8.

The district court held a hearing on February 15, 2006 on Defendant's motion to withdraw his plea, and denied the motion at the hearing. (Doc. 542.) At the hearing, Defendant's counsel Scott Boardman and AUSA Williams testified. The Court specifically inquired of Defendant's counsel whether Defendant asserted that AUSA Williams had promised to recommend a no-prison sentence or whether he had promised "not to object" to a no-prison sentence if Defendant fully cooperated. Defendant's counsel, Gary Edinger, stated that it was Defendant's position that AUSA Williams had only promised "not to object" to a no-prison sentence. (R. Vol. 9, at 100-01.) AUSA Williams also testified that he had told Mr. Boardman that if Defendant rendered substantial assistance to the Goverment, the Government would not object to a no-prison sentence. *Id.* at 62.

Prior to sentencing, Defendant requested a downward departure based on "extraordinary medical conditions," including chronic pain and a history of cancer. (Doc. 545.) On March 3, 2006, the district judge ordered the Bureau of Prisons (BOP) to assess Defendant's condition, and to provide a recommendation as to whether the BOP facilities could adequately treat Defendant's conditions. (Doc. 548.) The BOP concluded that Defendant had a small herniated disc, and that Defendant's trigeminal neuralgia (a nerve disorder causing pain in the face) was being treated with analgesics. (Doc. 575.) The BOP opined that Defendant showed no signs of cancer, and that BOP facilities were adequate to treat Defendant's medical conditions. *Id.*

Following receipt of this report, the district judge sentenced Defendant to 292 months in prison, the low end of the guideline range.  (Docs. 586, 606.)  Defendant appealed to the Eleventh Circuit, arguing first that the district court had erred in denying his motion to withdraw his guilty plea.  Defendant also argued that his sentence was unreasonable in light of his medical conditions, military service, tenure as a law enforcement officer, and lack of prior criminal history.  The Eleventh Circuit affirmed the conviction and remanded for resentencing, holding that the record was insufficient to permit a meaningful review of the sentence.  *United States v. Stevenson*, 240 F. App'x 343 (11th Cir. 2007).  The Eleventh Circuit held that the district court did not abuse its discretion when it denied Defendant's motion to withdraw his no-contest plea.  Specifically, the Eleventh Circuit noted that while "Stevenson did not know that a polygraph examination would be administered at the time he entered his plea. . . . he did know that the determination of whether he rendered substantial assistance lay within the government's sole discretion."  *Id*. at 345.  Although Defendant did not "specifically anticipate[]" the Government's refusal to accept his cooperation based on the results of the polygraph, the Eleventh Circuit held that "the government's decision to exercise its discretion in this manner does not convince us that the district court's ruling was an abuse of discretion."  *Id*. at 345-46.

The district court resentenced Defendant on January 3, 2008 to 235 months imprisonment, again at the low end of the guideline range in light of intervening changes in crack cocaine sentencing guidelines.  (Doc. 653.)  Defendant again appealed to the Eleventh Circuit, arguing that the district court erred in its computation of the amount of drugs attributable to him, that the sentence was unreasonable, and

that the district court did not provide adequate reasons for the sentence imposed. The

Eleventh Circuit rejected these arguments and affirmed the sentence. *United States v.*

*Stevenson*, 310 F. App'x 293 (11th Cir. 2008).

In the instant motion to vacate, Defendant asserts three grounds for relief. In

Ground 1, Defendant contends that his guilty plea was coerced by his trial counsel and

that his trial counsel had committed perjury at the hearing on his motion to withdraw his

plea. Ground Two asserts that Defendant's trial counsel failed to subject the

prosecution's case to meaningful adversarial testing. Ground 3 is a claim of

prosecutorial misconduct, in which Defendant asserts that the Assistant United States

Attorney unfairly obtained his guilty plea through false promises and later breached the

plea agreement. (Doc. 1.)

## Standard of Review

A prisoner is entitled to relief under § 2255 if the court imposed a sentence that

(1) violated the Constitution or laws of the United States, (2) exceeded the court's

jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to

collateral attack. 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th

Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). Collateral

review is not a substitute for direct appeal, and therefore the grounds for collateral

attack on final judgments pursuant to § 2255 are extremely limited. "Relief under 28

U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow

compass of other injury that could not have been raised in direct appeal and would, if

condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d

1225, 1232 (11th Cir. 2004) (citations omitted). Further, disposition of a claim of error

on direct appeal precludes further review in a subsequent collateral proceeding. *See, e.g., Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994).

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697. The court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice. *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

With regard to the performance prong of *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). The court must consider counsel's performance in light of all of the circumstances at that time and indulge in a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance. *Strickland*, 466 U.S. at 689-90. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted).

The prejudice prong of *Strickland* focuses on whether the trial was unreliable or fundamentally unfair due to counsel's deficient performance. *Strickland*, 466 U.S. at 687. Unreliability or unfairness is not established if counsel's assistance did not deprive the defendant of a constitutionally protected right. *Williams v. Taylor*, 529 U.S. 362,

393 n.17 (2000). To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

Further, in the plea context, to show prejudice Petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The requirement of a showing of prejudice in the guilty-plea context serves "the fundamental interest in the finality of guilty pleas." *Id*. at 58. The inquiry as to whether a reasonable probability exists that a defendant would have insisted on going to trial "should be made objectively, without regard for the 'idiosyncracies of the particular decisionmaker.'" *Id*. at 60 (quoting *Evans v. Meyer*, 742 F.2d 371, 375 (7th Cir. 1984)). Here, where Defendant pled no-contest, he must similarly show prejudice by showing that he would not have pled no-contest and would have insisted on going to trial.

Finally, by entering a voluntary plea, a defendant waives several rights, including the right to a jury trial, to the assistance of counsel at trial, to raise a defense, and to confront his accusers. *Boykin v. Alabama*, 395 U.S. 563, 573 (1989). Further, a voluntary and intelligent guilty plea forecloses federal collateral review of alleged constitutional errors preceding the entry of the plea, including claims of ineffective-assistance that do not attack the voluntariness of the plea. *See Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973); *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992); *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983).

**Claim One: Coerced Plea**

Defendant's first claim is that his trial counsel was ineffective, because he induced Defendant to plead no-contest based on the promise of the Government to recommend a no-prison sentence. Defendant also claims that his trial counsel perjured himself at the hearing on Defendant's motion to withdraw his plea, because his trial counsel testified that AUSA Williams only promised not to object to a no-prison sentence, rather than promising to *recommend* such a sentence.

Defendant was represented by different retained counsel on appeal. The voluntariness of Defendant's plea, therefore, could have been raised on direct appeal, but was not. Defendant did challenge on appeal the trial court's denial of his motion to withdraw his no-contest plea. In that motion, Defendant argued both that the Government had promised "to recommend" a no-prison sentence and that the Government had promised "not to object" to a no-prison sentence. As discussed above, Defendant abandoned the claim that the Government had promised to recommend a specific sentence at the motion hearing, and the Eleventh Circuit decision focused on the Government's decision to base Defendant's cooperation on the results of the polygraph test.

An allegation of a coerced plea, supported by a factual allegation, can support a § 2255 motion. *See Fontaine v. United States*, 411 U.S. 213, 214–15 (1973); United *States v. Lampazianie*, 251 F.3d 519, 524 (5th Cir.2001). However, a defendant's statements during a Rule 11 colloquy, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. *Blackledge v. Allison*, 431 U.S. 63, 73–74(1977); *see also Holmes v.*

*United States*, 876 F.2d 1545, 1550 (11th Cir.1989) (trial court satisfied itself during Rule 11 colloquy of voluntary and understanding nature of plea). Solemn declarations made under oath in open court carry a strong presumption of verity. *Blackledge*, 431 U.S. at 73–74; *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir.1994) (citations omitted). They are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise; the subsequent presentation of conclusory and contradictory allegations does not suffice. *Blackledge*, 431 U.S. at 73–74. Consequently, a defendant "bears a heavy burden to show his statements [under oath] were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir.1988).

A review of the plea colloquy reflects that the Court advised Defendant of his right to persist in his not-guilty plea, and of all of the Constitutional rights attendant to a not-guilty plea. Defendant affirmed, under oath, that he understood that if he pleaded no-contest he would give up any defenses to the charges and the trial would stop. Defendant stated that he understood he faced a minimum mandatory sentence of ten years imprisonment on the conspiracy charge, and a maximum sentence of life imprisonment. (R. Vol. 3, at 17.) Defendant affirmed that he could not withdraw his plea if his sentence was different from what counsel predicted. Defendant stated that his attorney had clearly explained the charges against him, that he had had sufficient time to discuss the case with his attorney, that he had answered all of his questions, and that he was fully satisfied with his advice. Defendant affirmed that he understood that the district judge had the discretion to impose a sentence above or below the guidelines, and that he understood that the district judge was required to impose the mandatory minimum sentence unless the Government filed a substantial assistance

motion. *Id.* at 19-20. Defendant further stated that he understood that the district

judge's discretion in imposing a sentence was limited only by the statutory maximum

sentence and the mandatory minimum sentence. *Id.* at 21.

Notably, Defendant affirmed that he understood that the Government would not

make any specific sentencing recommendation in his case, and that the Government

makes no sentencing recommendation in *any* case in the Northern District of Florida.

*Id.* at 22-23. Defendant stated that he understood that even if the Government chose,

in its sole discretion, to file a substantial assistance motion, that the district court still

had the discretion to impose a sentence at or above the mandatory minimum. *Id.* at 24-

25. Defendant further affirmed that even if he received no time off of his sentence after

a substantial assistance motion, he would still be bound by the terms of his plea

agreement. *Id.* at 25. Defense counsel and the prosecutor also affirmed on the record

that no assurances, promises, or understandings had been given to Defendant about

the disposition of his case other than what the Court had discussed as a matter of

record before Defendant in open court. *Id.* at 27-29.

After considering Defendant's responses to the colloquy, and hearing his plea of

no contest, the Court found that:

> [Y]ou, Roderick Myron Stevenson, to be alert and intelligent, that you do
> understand the nature of the charge against you and do appreciate the
> consequence of pleading no contest. . . . I further find that your decision to
> plead no contest is freely, voluntarily and intelligently made and that you
> have had advice and counsel from a competent lawyer with whom you say
> you are well pleased.

*Id.* at 29-30.

At the hearing on Defendant's motion to withdraw his plea, the Court referenced

the plea colloquy and inquired of Defendant's counsel, Mr. Edinger, if Defendant, Mr.

Boardman, and AUSA Williams had not been truthful when they testified that no secret

agreements had been made apart from what was memorialized in the plea agreement.

(R. Vol. 9, at 15-21.)  Mr. Edinger asserted that there was an agreement between

Defendant's counsel and the Government that the Government would not object to a

no-prison sentence if Defendant provided substantial assistance to the Government,

and that this agreement should have been made known to the Court during the plea

colloquy.  Both Mr. Boardman and AUSA Williams testified extensively as to this

"agreement," and both testified that the Government had agreed only not to object to a

no-prison sentence if Defendant tendered substantial assistance.

The only evidence provided by Defendant in support of his motion is an unsworn

letter from attorney Donald D. Sullivan, which Defendant refers to as an "affidavit."

Defendant describes Mr. Sullivan as Mr. Boardman's co-counsel, although Mr. Sullivan

never filed an appearance in the case.  In the letter, Mr. Sullivan states that he was

"privy to and witnessed" a promise by AUSA Williams to Mr. Boardman that if

Defendant "were to plead No Contest that they [the Government] would in turn provide

*concurrence* of a 'No Prison Time' sentence."  (Doc. 765, at 53, emphasis added.)  Mr.

Sullivan asserts that it was "illogical" for the Government to administer a polygraph test

that included questions about Defendant's guilt when Defendant had pled no-contest

rather than guilty, and concluded that the polygraph was "the U.S. Attorney's excuse for

admittedly retracting their *promise to concur* in 'No Prison time.'" *Id.* (emphasis added).

 Mr. Sullivan's unsworn statement regarding the circumstances under which the plea

agreement was made does not amount to compelling evidence showing that

Defendant's sworn testimony at the plea colloquy is untrustworthy. The colloquy is clear

that Defendant understood the potential sentencing exposure and that no contrary promise had been made.

Neither does Mr. Sullivan's unsworn statement constitute evidence that Mr. Boardman committed perjury at the hearing on Defendant's motion to withdraw his plea. Indeed, Mr. Sullivan's unsworn statement is consistent with both Mr. Boardman's testimony and AUSA Williams' testimony at the motion hearing. At no point does Mr. Sullivan assert that AUSA Williams promised Defendant or Defendant's counsel that he would recommend a no-prison sentence. Mr. Sullivan states, rather, that AUSA Williams promised that he would "provide concurrence" and "promise[d] to concur" in such a sentence, which is precisely what AUSA Williams himself testified to at the hearing, as a "promise to concur" is synonymous with a promise "not to object," rather than a "promise to recommend." *Id.*

On this record, Defendant has not met the "heavy burden to show [his] statements [under oath] were false." *Rogers*, 848 F.2d at 168. Neither has he provided any evidence that his experienced trial counsel committed perjury at the motion hearing. Accordingly, collateral relief is not warranted on the ground of a coerced plea.

## Claim Two: Ineffective Assistance of Counsel

Defendant asserts that his trial counsel was ineffective because he failed to subject the prosecution's case to meaningful adversarial testing, by 1) failing to call key witnesses throughout the proceedings, 2) failing to challenge the indictment, 3) failing to object to the breaching of the plea agreement, 4) failing to present any evidence on his behalf, and 5) failing to ask for a continuance on the day of trial, due to Defendant's medical issues.

Defendant first asserts that on August 22, 2005, he was prepared to go to trial, but instead pled no-contest. He asserts that Mr. Boardman was ineffective because instead of calling the twelve witnesses who were present and willing to testify at his trial, Mr. Boardman paid them "$100.00 dolars [sic] each for not testifying." (Doc. 765, at 32.) He also asserts that Mr. Boardman was ineffective for not calling these exculpatory witnesses during sentencing. Defendant is unable to demonstrate that his counsel's performance fell below an objective and reasonable professional norm. Because Defendant pled no-contest instead of going to trial, the witnesses who would have testified at the trial were excused. Insofar as Defendant asserts that his counsel was ineffective for not calling witnesses who would testify as to his innocence at his original sentencing, he is similarly unable to demonstrate that this decision fell below an objective and reasonable professional norm. At sentencing, Defendant had already been adjudged guilty, and witnesses who would have testified as to his innocence would not have been relevant. Mr. Boardman did present evidence in support of mitigation, particularly with respect to Defendant's physical condition. The district judge went so far as to postpone the sentencing hearing so that Defendant's health could be evaluated and so that the Bureau of Prisons could provide a report describing its ability to care for Defendant's illnesses. This claim therefore fails because Defendant is unable to meet the performance prong of *Strickland*. Defendant also cannot show that if Mr. Boardman had called these witnesses, he would not have pled no-contest and would instead have insisted on going to trial. Accordingly, Defendant is also unable to meet the prejudice prong of *Strickland*.

Defendant next argues that his counsel was ineffective for failing to challenge

the indictment "because it insufficiently charged him with conspiracy to distribute cocaine base." (Doc. 765, at 35.) Defendant's theory appears to be that he is innocent of the crime charged, and that his counsel possesses documents that "clearly contradict the theory of the government's case." *Id.* at 36. Defendant did not raise this claim on direct appeal, and offers no explanation for failing to do so. Further, because Defendant entered a voluntary and intelligent plea, federal collateral review of this alleged constitutional error that preceded entry of the plea is foreclosed. *See Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973); *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992); *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983). Even if the claim were not foreclosed, Defendant has presented no evidence in support of his speculative argument and fails to meet either prong of *Strickland*.

Defendant asserts that his counsel was ineffective because he failed to object to the breaching of the plea agreement. Mr. Boardman did, however, object to what he perceived as the breaching of the plea agreement by filing a motion for Defendant to withdraw his plea. By Defendant's own admission, this claim was "previously raised on Ground One." Accordingly, the claim fails for the reasons stated above.

Defendant argues that his counsel was ineffective for failing to present evidence on his behalf. It appears that this claim is based on Mr. Boardman's failure to call Mr. Sullivan as a witness at the hearing on the motion to withdraw Defendant's no-contest plea. As an initial matter, Mr. Boardman did not represent Defendant at that hearing, because Mr. Boardman himself was a witness. Insofar as this claim is brought against Mr. Edinger, Defendant has failed to demonstrate that the decision not to call Mr. Sullivan fell below an objective and reasonable professional norm. As discussed

extensively above, Mr. Sullivan's letter did not contradict the testimony of either Mr.

Boardman or AUSA Williams, in that it stated only that the Government had promised

"to concur" in a no-prison sentence rather than "to recommend" such a sentence.

There is no evidence in the record that Mr. Edinger knew or should have known that Mr.

Sullivan could be a witness for Defendant, and no evidence that he would testify in a

way that would be helpful to Defendant. If Mr. Sullivan had testified in a manner

consistent with his letter, his testimony would have been cumulative of both Mr.

Boardman and AUSA Williams' testimony. Accordingly, Defendant has failed to meet

both the performance and prejudice prongs of *Strickland*.

Finally, Defendant claims that his counsel was ineffective for failing to ask for a

continuance on the day of trial due to Defendant's medical issues. Insofar as

Defendant asserts that his plea was not knowing and voluntary due to his medical

issues and the medication that he was taking, he has presented no evidence in support

of this claim. Defendant acknowledged under oath that he had signed a stipulation that

he was competent to stand trial and that his medical issues were under control such

that he could understand what was happening in court, could consult with his lawyer,

and could participate in his own defense. (R. Vol. 3, at 4-5.) The district judge

questioned Defendant extensively regarding the medication he was taking, and

Defendant stated that the medication did not in any way interfere with his ability to fully

comprehend what he was doing and the consequences of his actions. *Id.* at 8-11.

Under these circumstances, Defendant has failed to show that Mr. Boardman's failure

to ask for a continuance fell below an objective and reasonable professional norm. He

has also failed to show that if Mr. Boardman had asked for a continuance, Defendant

would not have pled no-contest and would have insisted on going to trial. Accordingly, this claim fails both the performance and prejudice prongs of *Strickland*.

## Claim Three: Prosecutorial Misconduct

Defendant claims that AUSA Williams unfairly obtained his no-contest plea by falsely promising Defendant that he would recommend a no-prison sentence. At the outset, the Court notes that this claim was not raised on direct appeal. Defendant argues that Mr. Sullivan's unsworn letter is new evidence that was not available to him during his direct appeal, and that this justifies his default. As discussed above, however, Mr. Sullivan's unsworn letter is consistent with the testimony presented at the motion hearing, and therefore does not constitute new evidence. Even if the claim was not defaulted, it is duplicative of Claim One, discussed above. Defendant has presented no evidence that AUSA Williams promised that he would recommend a no-prison sentence. Rather, the record fully supports a finding that AUSA Williams stated that he would agree not to object to a no-prison sentence if Defendant provided substantial assistance to the Government, a practice which, apparently, was not uncommon.

Defendant also claims that AUSA Williams violated the plea agreement by advocating for a higher sentence when he had promised not to object to a no-prison sentence. This claim was also not raised on direct appeal, and Defendant has offered no reason for his failure to raise the issue. Even if the claim was not defaulted, however, the plea agreement clearly stated that the Government agreed not to recommend a specific sentence. (Doc. 497, at 3.) At sentencing, the Government did not at any time recommend a specific sentence. At the original sentencing, the

government asked the Court "to impose a sentence that reflects that violation and how important it is and the severity of the crime and the amount of narcotics that have been distributed in our community." (R. Vol. 8, at 4.)  At resentencing, the Government stated that it "believes that the evidence supports the original sentence that was imposed in this case." (R. Vol. 2, at 71.)  In neither hearing did the Government breach the plea agreement by recommending a specific sentence.  Nor could the Government have breached its verbal promise not to object to a no-prison sentence, because that promise was contingent on Defendant providing substantial assistance to the Government, which he had not done.  Accordingly, Defendant has not met his burden on this claim.

## Certificate of Appealability

Section 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2255 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is

an objection to this recommendation by either party, that party may bring this argument

to the attention of the district judge in the objections permitted to this report and

recommendation.

In light of the foregoing, it is respectfully **RECOMMENDED** that the motion to

vacate, Doc. 765, be **DENIED**, and that a COA be **DENIED.**

**IN CHAMBERS** this 21st  day of December 2012.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge


## NOTICE TO THE PARTIES

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**